Michael J. DiMattia
Philip A. Goldstein
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105-0106
(212) 548-2100
Attorneys for Defendants

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

ANN MARIE DIPONZIO, on behalf of herself and all
other employees similarly situated,

                       Plaintiff,

            v.

BANK OF AMERICA CORPORATION and BANK
OF AMERICA, NATIONAL ASSOCIATION,

                Defendants.

----------------------------------------------------------------- x

:  Case No. ___ Civ. _____
:  [New York Supreme Court
:  Index No. 11-2921]
:
:  **DEFENDANTS' NOTICE**
:  **OF REMOVAL**
:
:
:
:
:

TO THE CLERK OF THE COURT:

        PLEASE TAKE NOTICE that Defendants BANK OF AMERICA
CORPORATION ("BOAC") and BANK OF AMERICA, N.A. (erroneously sued herein as
"BANK OF AMERICA, NATIONAL ASSOCIATION") ("BANA") (collectively, the
"Defendants") hereby remove the above-entitled action from the Supreme Court of the State of
New York in and for the County of Monroe (the "State Court") to this United States District
Court for the Western District of New York, on the grounds that this Court has original
jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d), 28 U.S.C. § 1441, the Class
Action Fairness Act of 2005 ("CAFA"), and all other applicable bases for removal. In support of
their Notice of Removal, Defendants aver as follows:

1.　　　On or about March 10, 2011, Plaintiff Ann Marie DiPonzio ("Plaintiff") filed a Complaint in the Supreme Court of the State of New York, County of Monroe, Index No. 11-2921, entitled *Ann Marie DiPonzio, on behalf of herself and all other employees similarly situated v. Bank of America Corporation and Bank of America, National Association* (the "State Court Action").  Attached hereto as Exhibit A is an index identifying each document filed and/or served in the State Court Action.  A true and correct copy of each document filed and/or served in the State Court Action, other than discovery materials, is attached hereto in chronological order as Exhibit B.  Defendants are informed and believe that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

2.　　　On March 15, 2011, Defendants were served with copies of the Summons and Complaint.

3.　　　Defendants have no information that any other persons or entities have or will be named as DOE defendants in this action.

4.　　　In accordance with 28 U.S.C. § 1446(d), Defendants have given contemporaneous written notice of this Notice of Removal to all adverse parties and to the Clerk of the State Court.

5.　　　The instant action may be removed to this Court by Defendants pursuant to the provisions 28 U.S.C. §§ 1332(d) and 1441(b) and CAFA, and all other applicable bases for removal.

6.　　　Defendants' Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based."  Defendants have filed this Notice of Removal within 30 days of March 15, 2011, the date the first defendant in this action was served with the Summons

and Complaint, and, hence, the first date upon which any defendant in this action received any paper giving it knowledge that the action was indeed removable. *See* 28 U.S.C. § 1446(b).

7.      Defendants will cause notice of this removal to be filed with the Supreme Court of the State of New York, County of Monroe.

8.      Defendants are informed and believe that as of the date of the filing of this Notice of Removal, no other parties have been served.

9.      Plaintiff purports to bring this action pursuant to Article 9 of the CPLR as a class/representative action, and seeks class certification on behalf of a class of "all Loan Originator Employees who are working or have worked for [Defendants] in the last six (6) years in the Buffalo, Rochester, Syracuse, Albany, and Saratoga Springs metropolitan areas and were classified as exempt." (Exhibit B, Complaint, ¶ 11). Plaintiff asserts that her claims are typical of those of the putative class members she seeks to represent. (Exhibit B, Complaint, ¶ 23).

10.     Plaintiff purports to allege claims for recovery of minimum and overtime wages for alleged misclassification of non-exempt Loan Originator employees in violation of the New York Labor Law. (Exhibit B, Complaint, ¶¶ 9, 35-37, 42).

11.     Under CAFA, this Court has jurisdiction over class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant and where the aggregate amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

## CITIZENSHIP OF THE PARTIES

12.     Defendants are informed and believe that Plaintiff is a resident and citizen of the State of New York. (Exhibit B, Complaint, ¶ 6.)

3

13.     Defendant BANA is a federally chartered national bank with its headquarters and principal place of business in the State of North Carolina.  (Exhibit B, Complaint, ¶ 3).  At the time the Complaint was filed, the principal place of business for BANA was in Charlotte, North Carolina.  *Id.*  Thus, Defendant BANA was not and is not a citizen of the State of New York but, rather, was and is a citizen of the State of North Carolina for the purpose of determining jurisdiction.

14.     Defendant BOAC is a corporation formed and existing under the laws of the State of Delaware.  (Exhibit B, Complaint, at ¶ 2).  At the time the Complaint was filed, the principal place of business for BOAC was in Charlotte, North Carolina.  (Exhibit B, Complaint, at ¶ 2).  At its corporate headquarters, Defendant BOAC's officers direct, control and coordinate its activities, and the majority of its executive and administrative functions are performed there.  Thus, Defendant BOAC was not and is not a citizen of the State of New York but, rather, was and is a citizen of the States of Delaware and North Carolina for the purpose of determining jurisdiction.  *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) (for the purposes of removal, the "nerve center" test applies, whereby a corporation is deemed to be a citizen of the State where the corporation's officers direct, control, and coordinate the corporation's activities).

15.     Plaintiff purports to be a member of the putative class and is a citizen of a state different from Defendants.

16.     For purposes of establishing the minimal diversity necessary to invoke the jurisdiction of this Court under CAFA, Defendants need only establish that members of the putative class of plaintiffs are citizens of different states than one defendant  28 U.S.C. § 1453(b).  Therefore, the diversity of citizenship between Plaintiff (New York) and either Defendant BANA (North Carolina) or Defendant BOAC (Delaware and/or North Carolina), is

4

sufficient to establish diversity for purposes of the removal of this action under CAFA.

## AMOUNT IN CONTROVERSY

17.     Whether the amount in controversy reaches $5 million depends on two factors: (1) the number of putative class members that are within the class, and (2) the potential value of the aggregate damages suffered by plaintiffs. *Lebowitz v. Dow Jones & Co.,* 2008 U.S. Dist. LEXIS 68212, *3-4 (S.D.N.Y. 2008).    While the court considers as evidence of the amount in controversy that which is "facially apparent" from the Complaint, it may also consider facts submitted with the removal petition, particularly where, as here, the amount in controversy is not plainly evident from the pleadings. *See LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."); *United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square*, 30 F.3d 298, 305 (2d Cir. 1994) ("*Centermark*") ("Where the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record.").   A defendant "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount. *Maxons Restorations, Inc. v. Newman*, 292 F. Supp.2d 477, 481 (S.D.N.Y. 2003).   In addition, the Court must construe all ambiguities and draw all reasonable inferences in favor of the party asserting federal jurisdiction. *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 78 (S.D.N.Y. 2006).

18.     Plaintiff's Complaint is ambiguous as to the total amount of monetary relief sought.  According to the Complaint, the putative class is "so numerous that joinder of all Class Members is impracticable."  (Exhibit B, Complaint, at ¶ 23).   Although Plaintiff's Complaint

5

purports to allege that the total number of putative class members is no more than 100 employees, Plaintiff also admits that she "do[es] not know . . . the exact size of the potential class." (Exhibit B, Complaint, at ¶ 17).  Moreover, while Plaintiff alleges in the Complaint that she "estimate[s]" that the aggregate damages do not exceed CAFA's jurisdictional minimum, she does not limit her recovery to under $5 million in her Prayer for Relief.  Instead, she seeks "all unpaid wages due to plaintiffs" and "liquidated damages."  In the section of the Complaint entitled "Class Action Allegations," Plaintiff alleges that "[n]o claim by any Class Member is believed to exceed $75,000" and that "[t]he *estimated* total damages for the Class Members' claims do not exceed $5,000,000."  (Exhibit B, Complaint, ¶¶ 24-25 [emph. added]).  However, the Prayer for Relief of the Complaint contains no limitation.  *See id.*, Prayer ¶¶ (a)-(k) (praying for, e.g., the *full amount* of "all unpaid wages due to plaintiffs" [¶ (g)], *unlimited* "liquidated damages" for wage violations [¶ h], for *unlimited* recovery of liquidated damages [¶ (h)], for *unlimited* "attorneys' fees, costs, and expenses incurred."  In fact, it seeks *all* "legal and equitable relief as the Court deems just and proper."  *Id.* at ¶ (j).  Thus, Plaintiff's Complaint is ambiguous as to the total amount of monetary relief sought despite her allegations purporting to limit her damages recovery to below the jurisdictional minimum.  *See Centermark, supra*, 30 F.3d at 305 (holding that complaint's prayer seeking "such other relief at law or in equity as is fair and just" provides no reliable indication of the specific amount of damages claimed).

19.    A defendant may remove a suit to federal court notwithstanding a plaintiff's "disclaimer" purportedly limiting recovery to under the jurisdictional minimum, where, as here, the language of the disclaimer results in an ambiguity regarding the amount-in-controversy or is otherwise contradicted in another section of the Complaint.  *Mattera, supra*, 239 F.R.D. at 78. In such cases, a defendant must prove "that it appears to a reasonable probability" that the

amount-in-controversy necessary for removal under CAFA is satisfied.  *Id.*; *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006); *Maxons Restorations, Inc. v. Newman*, 292 F. Supp. 2d 477, 481 (S.D.N.Y. 2003).  On the other hand, where jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with "competent proof" and "justify [its] allegations by a preponderance of evidence."  *Centermark, supra*, 30 F.3d at 305.  Under *either* standard, as set forth below, Defendants have properly established that the amount in controversy in this action exceeds the jurisdictional minimum.

20.     Plaintiff alleges that she worked for Defendants "as a Mortgage Loan Officer in its Rochester mortgage loan office beginning in January 2009."  (Exhibit B, Complaint, ¶ 6). Plaintiff purports to represent a putative class of "Loan Originator Employees" "whose job duties included working as a Mortgage Loan Originator, Mortgage Loan Officer, Mortgage Loan Consultant, or similar title and position" and who "during the last six (6) years, were suffered or permitted to work more than 40 hours in a week . . . for [Defendants] in the upstate New York geographical area, including all employees and former employees who worked in [Defendants'] mortgage loan offices located in the Buffalo, Rochester, Syracuse, Albany, and Saratoga Springs metropolitan areas." (Exhibit B, Complaint, ¶¶ 14, 16).  Plaintiff asserts that her claims are typical of those of the putative class members she seeks to represent.  (Exhibit A, Complaint, ¶ 19).

21.     Defendants contend that the true number of putative class members in this action exceeds 100.  Indeed, as is set forth in the accompanying Declaration of Burges E. Burrows, there are a total number of 118 current and former employees who worked and/or are working as Mortgage Loan Officers and/or Mortgage Loan Officer Managers from 2005 to the present in the geographic areas encompassed by the definition of the putative class alleged in the Complaint.

1834047.1 4/14/2011

Declaration of Burges E. Burrows ("Burrows Decl."), ¶ 2.

22.    Thus, for purposes of calculating the amount in controversy for the sole and limited purpose of determining CAFA jurisdiction, as set forth below, and based on the allegations in Plaintiff's Complaint, Defendants have utilized the following conservative assumptions for the applicable limitations period:

- The putative class consists of 118 individuals employed by Defendants, or either of them, from 2005 to the present in the position of Mortgage Loan Officer or Mortgage Loan Officer Manager (collectively, "MLOs"), rather than the entire population of all current and former Loan Originator Employees whom the Plaintiff purports to represent (Burrows Decl., ¶ 2);

- The average base salary of all MLOs is approximately $54,969.97 per year, or $26.43 per hour ($39.65 per hour overtime rate), based on 2080 hours per year (excluding incentive compensation) (*id.*, ¶ 3);

- The putative class members are claiming and/or will claim to have worked on average 10 hours of overtime per workweek during their tenure, while working only 50 weeks per year;[1] and

- Each putative class member worked as an MLO for only 1.46 years of the putative class period. *Id.*

_____

[1] In the related action of *Kelly, et al. v. Bank of American, N.A., et al.*, N.D. Ill. Case No. 1:10-cv-05332 ("*Kelly*"), two MLOs who worked for Defendant BANA in New York during the putative class period covered by this case have submitted declarations in support of the *Kelly* Plaintiffs' pending motion for conditional class certification in which they claim that "[o]n average," they "worked a total" of 25-30 overtime "hours per week." *Kelly* Declaration of Lawrence Fener (Dkt. #36-1), ¶ 4 at p. 72 (65 hours total per week); *Kelly* Declaration of David Strause (Dkt. #36-1), ¶ 4 at p. 33. Accordingly, Defendants' assumptions that Plaintiff and the putative class members in this case worked approximately one-third of the overtime hours claimed by the *Kelly* New York MLOs declarants is extremely conservative. True and correct copies of the Fener and Strause Declarations filed in the *Kelly* action are attached hereto as Exhibits C and D, respectively, and Defendants request that the Court take judicial notice of each of them pursuant to Fed. R. Evid. 201.

23.     Plaintiff's purported First Cause of Action in the Complaint alleges claims for overtime compensation on the basis that she and the putative class members were not paid premium compensation for all hours worked in excess of 40 hours per week and/or 8 hours per day.  (Exhibit B, Complaint, ¶¶ 42-44).  A six-year statute of limitations applies to Plaintiff's First Cause of Action for overtime wages pursuant to N.Y. Civ. Prac. Law & Rules ("CPLR") § 904.  CPLR § 198(3).  Based on the foregoing conservative assumptions, Plaintiff and each of the other 118 MLOs in the putative class claim to be owed overtime wages of **$3,414,745.37** ($39.64 per hour x 730 hours of overtime [10 hours/workweek x 50 weeks x 1.46 years] x 118 MLOs).[2]

24.     In addition, Plaintiff's Complaint also seeks an award of liquidated damages pursuant to N.Y. Lab. Law § 198(1-a) in connection with the overtime claims asserted in the Complaint.  (Exhibit B, Complaint, Prayer for Relief, ¶ (h)). Effective as of April 9, 2011, N.Y. Lab. Law § 198(1-a) provides for liquidated damages of 100% of the total amount of wages found to be due.[3]  A six (6) year statute of limitations applies to Plaintiff's claim for liquidated damages.  N.Y. Lab. Law § 198(3).  Thus, the calculation of the potential amount in controversy for these liquidated damages during the applicable limitations period is **$3,414,745.37** as well.

25.     Therefore, the total amount in controversy on Plaintiff's purported **First Cause of Action** for overtime compensation and liquidated damages under CPLR § 904 and 6 N.Y. Lab.

---

[2] This calculation is based solely on Plaintiff's theory of liability alleged in the Complaint.  Defendants deny and dispute that any such liability exists and/or that Plaintiff's calculation methodology is correct and would apply.

[3] Prior to April 9, 2011, liquidated damages could be assessed in an amount equal to 25% of the total amount of wages found to be due.  It is unclear whether the increased liquidated damages percentage that went into effect on April 9, 2011 applies only to wages found to be due for hours worked on or after that date, or also to hours worked before that date which have not yet been found to be due.  Although Defendants do not concede and in fact dispute, *inter alia*, that the higher liquidated damages percentage would apply to hours worked before April 9, 2011, Plaintiff's Complaint does not so limit the claim and/or prayer for liquidated damages being made.  Regardless, even applying the 25% liquidated damages amount in effect prior to April 9, 2011, the amount in controversy in this action still exceeds $5 million utilizing the assumptions set forth above.

Law § 198(1-a) is not less than **$6,829,490.74**.

26.     Plaintiff's Complaint also seeks an award of statutory attorneys' fees in connection with each of the claims asserted in the Complaint.  (Exhibit B, Complaint, Prayer for Relief, ¶ (j)).  Where attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *Pollock v. Trustmark Ins. Co.*, 367 F.Supp.2d 293, 298 (E.D.N.Y. 2005) ("Attorney's fees can be considered as part of the amount in controversy where they are anticipated or awarded in the governing statute.").  The Second Circuit uses a benchmark rate of 33% of the potential damages award as an estimate for attorneys' fees.  *See McMahon v. Oliver Cheng Catering and Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, *20-21 (S.D.N.Y. Mar. 2, 2010) (holding that a 33% attorneys' fees award is "reasonable" and "consistent with the norms of class litigation in this circuit.").  *See also, e.g.*, *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067, *21-*22 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Wash. Mut. Bank*, Nos. 06-CV-2817 (JMA),No. 08 Civ. 00287 (CBA)(JMA), 2009 U.S. Dist. LEXIS 94544, at *4, *13 (E.D.N.Y. Oct. 2, 2009) (awarding 30% of $38,000,000 fund in nationwide overtime suit); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 U.S. Dist. LEXIS 85955, at *8-9 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL tip misappropriation case); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS 45277, at *10-11 (S.D.N.Y. May 28, 2009) (awarding 33% of $ 710,000 fund in FLSA and NYLL tip misappropriation case); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, *13-17 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case);

*Stefaniak v. HSBC Bank USA, N.A.,* No. 05 Civ. 720, 2008 U.S. Dist. LEXIS 53872, *9 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211, at * 1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund).   Applying this benchmark to Defendants' calculations of the potential amounts in controversy, above, the potential amount in controversy related to Plaintiff's claim for a statutory award of attorneys' fees is calculated at **$2,253,731.94**.

27.     In summary, the amount in controversy in this action for purposes of CAFA is conservatively calculated, based on the information presently known to Defendants about Plaintiff's claims for overtime compensation and liquidated damages under CPLR § 904 and N.Y. Lab. Law § 198, as follows:

| | |
|---|---|
| First Cause of Action for Overtime Wages | $3,414,745.37 |
| First Cause of Action for Liquidated Damages | $3,414,745.37 |
| **Subtotal** | **$6,829,490.74** |
| Statutory Attorneys' Fees Claim | $2,253,731.94 |
| **TOTAL AMOUNT IN CONTROVERSY**[4] | **$9,083,222.68** |

28.     Nothing in this Notice is intended or should be construed as any type of express or implied admission by Defendants of any fact, of the validity or merits of any of Plaintiff's claims and allegations, or of any liability for the same, each and all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of Defendants'

---

[4] *See* Paragraph 28, *infra*.

1834047.1 4/14/2011

rights, claims, remedies, and defenses in connection with this action, all of which are hereby expressly reserved.

## VENUE

29.     This is a civil action brought in a New York state court.  Defendants are informed and believe that the events allegedly giving rise to this action occurred within this judicial district.  This court has original jurisdiction in this action under 28 U.S.C. § 1332 because (1) CAFA permits removal of a class action, even without complete diversity of citizenship between the parties; (2) the amount in controversy exceeds $5,000,000.00; and (3) the total membership of the putative class(es) is 100 or more class members.  Accordingly, as the State Court Action is now pending in Monroe County, New York, Defendants are entitled, pursuant to 28 U.S.C. § 1441(a), to remove this action to the United States District Court for the Western District of New York.

30.     By filing this Notice of Removal, Defendants do not waive any defenses, either procedural or substantive, which may be available to them, including, but not limited to, their right to contest *in personam* jurisdiction, improper service of process or the absence of venue in this Court or in the court from which the action has been removed.

1834047.1 4/14/2011

WHEREFORE, Defendants respectfully request that the above-captioned action now pending in the State Court be removed to this United States District Court.

Dated: New York, New York
      April 14, 2011

                          McGUIREWOODS LLP

By: _____
           Michael J. DiMattia (MD-0473)
           Philip A. Goldstein (PAG-0908)
           1345 Avenue of the Americas, 7th Floor
           New York, New York 10105-0106
           (212) 548-2100
           Attorneys for Defendants

13

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have caused a true and correct copy of Defendants' Notice of Removal to be served on Ann Marie DiPonzio, by depositing same via United States Postal Service, first class mail, postage prepaid to:

Andrew M. Burns, Esq.
Steven G. Carling, Esq.
BURNS & SCHULTZ LLP
28 East Main Street, Suite 900
Rochester, NY 14614
(585) 672-2600

Dated:  April 14, 2011
        New York, New York

_____
Philip A. Goldstein

\30286444.5

14

UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANN MARIE DIPONZIO, on behalf of herself and all other
employees similarly situated,

                              Plaintiff,

       v.

BANK OF AMERICA CORPORATION and BANK OF
AMERICA, NATIONAL ASSOCIATION,

                            Defendants.

**INDEX OF
ATTACHMENTS**

Civil Action No. _____

The following is an index of each document filed in the state court action and listed chronologically:

## ATTACHMENTS

1)    Summons and Complaint, filed on March 10, 2011, in the New York Supreme Court, County of Monroe; Index No. 11-2921.

1833975.1

STATE OF NEW YORK
SUPREME COURT                    COUNTY OF MONROE

ANN MARIE DIPONZIO, on behalf of herself and all other
employees similarly situated,

                                                    Plaintiff,

                        - vs. -                                        **SUMMONS**

                                                                      Index No. 11-2921

BANK OF AMERICA CORPORATION and BANK OF
AMERICA, NATIONAL ASSOCIATION,

                                                    Defendants.

**TO:**   Bank of America, National Association       Bank of America Corporation
          Bank of America Corporate Center            c/o CT Corporation System
          100 N. Tryon Street                         150 Fayetteville Street, Box 1011
          Charlotte, North Carolina 28255             Raleigh, North Carolina 27601

    **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to

serve a copy of your answer, or, if the Complaint is not served with this Summons, to serve a

notice of appearance, on the plaintiff's attorney within 20 days after service of this Summons,

exclusive of the day of service, where service is made by delivery upon you personally within

the state, or within 30 days after completion of service where service is made in any other

manner.  In case of your failure to appear or answer, judgment will be taken against you by

default for the relief demanded in the Complaint.

    The basis of the venue is the named plaintiff's residence.

Date:  March 10, 2011                         **BURNS & SCHULTZ LLP**

                                              _Andrew Burns_
                                              Andrew M. Burns
                                              Steven G. Carling
                                              First Federal Plaza
                                              28 East Main Street, Suite 900
                                              Rochester, NY  14614
                                              (585) 672-2600
                                              Attorneys for plaintiffs

STATE OF NEW YORK
SUPREME COURT        COUNTY OF MONROE

ANN MARIE DIPONZIO, on behalf of herself and all other
employees similarly situated,

                                             Plaintiffs,

             - vs. -

BANK OF AMERICA CORPORATION and BANK OF
AMERICA, NATIONAL ASSOCIATION,

                                      Defendants.

**COMPLAINT**

Index No. 11-2921

Plaintiff Ann Marie DiPonzio, on behalf of herself and all others similarly

situated, by and through counsel, for her complaint against defendants Bank of America

Corporation and Bank of America, National Association, states as follows:

## INTRODUCTION

1.      This is an action for declaratory and injunctive relief and monetary

damages to redress the deprivation of rights secured to plaintiff Ann Marie DiPonzio

individually, as well as all other employees similarly situated, under the New York Labor

Law, 12 N.Y.C.R.R. Part 142 ("Labor Law") for failure to pay wages and other current

and former violations and obligations owed to the class by defendants, as well as

certification of a class action pursuant to Article 9 of the New York Civil Practice Law

and Rules ("CPLR").

2.      Defendant Bank of America Corporation is a Delaware corporation with

its principal place of business in North Carolina.  Bank of America Corporation does

business in the State of New York.

3.      Defendant Bank of America, National Association is a nationally chartered bank with its principal place of business in North Carolina. Bank of America, National Association does business in the State of New York.

4.      Defendants Bank of America Corporation and Bank of America, National Association (collectively, "BOA") operate mortgage loan offices in the State of New York, including offices in the Buffalo, Rochester, Syracuse, Albany, and Saratoga Springs metropolitan areas.

5.      BOA employs individuals with various titles, including Mortgage Loan Originators, Mortgage Loan Officers, Mortgage Loan Consultants, and similar titles (collectively, "Loan Originator Employees") in these offices.

6.      Named plaintiff Ann Marie DiPonzio ("Named Plaintiff" or "DiPonzio") is a resident of Rochester, Monroe County, New York.  BOA employed DiPonzio as a Mortgage Loan Officer in its Rochester mortgage loan office beginning in January 2009.

7.      BOA is one of the world's largest financial institutions and provides financial services, including mortgages, to individual consumers throughout the United States, including New York.

8.      BOA's policy and practice is to deny paying earned wages, including minimum wage and overtime pay, to its Loan Originator Employees.

9.      At all relevant times, BOA required its Loan Originator Employees to perform work in excess of eight (8) hours per day and in excess of forty (40) hours per week, but failed to pay them minimum wage and overtime by illegally classifying them as exempt from overtime and minimum wage requirements.

-2-

10.     BOA's deliberate illegal classification of its Loan Originator Employees as exempt from minimum wage and overtime requirements violated the Labor Law.

11.     The Named Plaintiff brings this class action under Article 9 of the CPLR and the Labor Law for unpaid overtime and minimum wage compensation, and related damages, on behalf of all Loan Originator Employees who are working or have worked for BOA in the last six (6) years in the Buffalo, Rochester, Syracuse, Albany, and Saratoga Springs metropolitan areas and were classified as exempt.

12.     BOA's practice and policy was and is to willfully fail and refuse to pay minimum wage and overtime compensation due to its Loan Originator Employees.

13.     BOA required its Loan Originator Employees to work for straight commissions or draw against commissions, but failed to pay them overtime for their work in violation of the Labor Law.  BOA also required its Loan Originator Employees to work long hours with no or inadequate base pay so that BOA failed to pay its Loan Originator Employees the statutory required minimum wage in violation of the Labor Law.

## CLASS ACTION ALLEGATIONS

14.     Named Plaintiff brings this class action pursuant to Article 9 of the CPLR against BOA for unpaid overtime and minimum wage compensation and related damages on behalf of all Loan Originator Employees who are working or have worked for BOA in the last six (6) years in the Buffalo, Rochester, Syracuse, Albany, and Saratoga Springs metropolitan areas and were classified as exempt employees.

15.     The claims asserted in this case under the Labor Law are properly maintainable as a class action pursuant to CPLR § 901.

-3-

16.     The Class (hereinafter referred to as those individuals similarly situated or "Class Members") consists of current and former employees of BOA who, during the last six (6) years, were suffered or permitted to work more than 40 hours in a week, whose job duties included working as a Mortgage Loan Originator, Mortgage Loan Officer, Mortgage Loan Consultant, or similar title and position, and who worked for BOA in the upstate New York geographical area, including all employees and former employees who worked in BOA's mortgage loan offices located in the Buffalo, Rochester, Syracuse, Albany, and Saratoga Springs metropolitan areas.

17.     Plaintiffs do not know at this time the exact size of the potential class, but believe it exceeds 50 employees but does not exceed 100 employees.

18.     Common questions of law and fact predominate in this action because the claims of all Class Members are based on whether BOA's practice and policy of not paying minimum wage and statutory overtime to its Loan Originator Employees for hours worked in excess of forty (40) hours per week violated the Labor Law.

19.     Named Plaintiff will adequately represent the interest of the Class Members because she is similarly situated to the Class Members and her claims are typical of, and concurrent to, the claims of the other Class Members.

20.     There are no known conflicts of interest between the Named Plaintiff and the other Class Members.

21.     Class counsel, Burns & Schultz LLP, is qualified and able to litigate the Class Members' claims.

22.     Class counsel concentrates its practice in civil litigation, including employment litigation, and it is experienced in class action and complex litigation,

-4-

including class actions involving claims for earned wages, and minimum wage and overtime pay.

23.     The Class is maintainable under CPLR § 901(a) because (1) the class is so numerous that joinder of all Class Members is impracticable; (2) there are questions of law or fact common to the Class Members which predominate over any questions affecting any individual members; (3) the claims of the Named Plaintiff are typical of the claims of the Class Members; (4) the Named Plaintiff will fairly and adequately protect the interest of the Class; and (5) a class action is superior to other available methods for the fair and efficient and adjudication of the controversy.

24.     No claim by any Class Member is believed to exceed $75,000.

25.     The estimated total damages for the Class Members' claims do not exceed $5,000,000.

## FACTUAL ALLEGATIONS

26.     At all relevant times, BOA was an "employer" within the meaning of the Labor Law.

27.     At all relevant times, Named Plaintiff and the Class Members have been "employees" within the meaning of the Labor Law.

28.     The primary job duty of BOA Loan Originator Employees is to sell home mortgages loans to individuals.  Loan Originator Employees do not regularly supervise employees, do not exercise independent judgment as to matters of significance, or perform office work related to BOA's general business operations or its customers.  Loan Originator Employees have no advance knowledge in a field of science or learning that requires specialized instruction to perform the job.

29.     Loan Originator Employees typically spend most if not all of their work time in BOA's offices selling mortgages to individuals.

30.     BOA failed to accurately record the actual time worked by its Loan Originator Employees even though it easily and accurately could have recorded the actual time worked by the Loan Originator Employees.

31.     Named Plaintiff and the Class Members are all similarly situated in that they all performed essentially the same respective job functions.

32.     BOA's unlawful practices and procedures affected all Loan Originator Employees who are Class Members.

33.     BOA paid its Loan Originator Employees through a straight commission or draw against commissions.

34.     BOA illegally classified its Loan Originator Employees, including the Named Plaintiff and Class Members, as exempt and thus not entitled to receive minimum wage or overtime compensation.

35.     Named Plaintiff and Class Members frequently worked well in excess of forty (40) hours in a week while employed by BOA in an effort to sell home mortgage loans and thus obtain commissions, including working nights and weekends.

36.     Named Plaintiff and Class Members worked as Loan Originator Employees for BOA and were not paid time and one-half for hours they worked over forty (40) hours in a week.

37.     Named Plaintiff and Class Members did not perform job duties or tasks that permitted them to be exempt from overtime compensation.

-6-

38.     The Labor Law requires each covered employer, such as BOA, to compensate all non-exempt employees for services performed and to compensate them at a rate of not less than one and one-half the regular rate of pay for work performed in excess of forty (40) hours in a work week.

39.     Named Plaintiff and Class Members are similarly situated in that they were all subjected to BOA's compensation policies, plans, and procedures that required them to be present at work while compensating them on a commission or draw basis without paying them overtime in violation of the Labor Law.

40.     BOA's conduct constitutes a willful violation of the Labor Law.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Violation of the New York Labor Law)

41.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 – 40 of this complaint as if fully set forth and restated here.

42.     BOA willfully misclassified the Named Plaintiff and Class Members as exempt from the minimum wage and overtime laws of New York even though their duties as Loan Originator Employees did not meet the test for any exemption under the Labor Law.

43.     BOA willfully and with full knowledge that Named Plaintiff and Class Members were working over forty (40) hours in a week, failed to pay them overtime at a rate of one and one-half their regular rate of pay when they worked over forty (40) hours in a week as Loan Originator Employees.

44.     As a direct and proximate result of BOA's willful violations of the Labor Law, plaintiffs have incurred lost wages, including unpaid overtime.

-7-

**WHEREFORE**, plaintiffs demand that the Court enter judgment against BOA:

(a)   · Certifying this action as a class action pursuant to Article 9 of the CPLR on behalf of the Class Members and issuing a notice pursuant to CPLR § 904 to all Class Members apprising them of the commencement of this action;

(b)   Designating Named Plaintiff Ann Marie DiPonzio as representative of the Class;

(c)   Declaring that BOA pay for the cost of giving all notices the Court may require in this Action to the Class Members;

(d)   Designating Burns & Schultz LLP as the attorneys representing the Class Members;

(e)   Declaring that the acts and practices complained of herein are in violation of the Labor Law;

(f)   Enjoining BOA and their officers, employees, agents, successors, and all entities and persons acting in concert with them, as provided by law, from engaging in any of the unlawful practices and policies complained of herein;

(g)   Awarding damages for all unpaid wages due to plaintiffs;

(h)   Awarding liquidated damages to plaintiffs;

(i)   Awarding pre-judgment and post-judgment interest as allowed by law;

(j)   Awarding plaintiffs their reasonable attorneys' fees, costs, and expenses incurred; and

(k)   Such other and further legal and equitable relief as the Court deems just and proper.

Dated: March 10, 2011

**BURNS & SCHULTZ LLP**

_Andrew Burns_

Andrew M. Burns
Steven G. Carling
First Federal Plaza
28 East Main Street, Suite 900
Rochester, NY 14614
(585) 672-2600

*Attorneys for plaintiffs*
*Ann Marie DiPonzio and all*
*others similarly situated*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM P. KELLY, et al | ) |
| | ) |
| On Behalf of Themselves And | ) |
| All Others Similarly Situated, | ) |
| | ) |
| Plaintiffs, | )   Case No. 1:10-CV-05332 |
| | ) |
| vs. | ) |
| | ) |
| BANK OF AMERICA, N.A. et al | ) |
| | ) |
| Defendants. | ) |

## SWORN STATEMENT

I, Lawrence Fener, hereby swear under oath and penalty of perjury, that the following information is true and correct to the best of my personal knowledge and belief:

1.  My name is Lawrence Fener, and I currently reside at 9 Flint Road, East Rockaway, NY 11518.

2.  I worked as a Mortgage Loan Officer for Bank of America from on or about _10 / 01 /2008_ through on or about _04 / 01 /2010_ or present (if currently employed, circle present). I was a Bank of America ("B of A") Mortgage Loan Officer ("MLO") who worked at B of A's offices located at Melville, NY. There were numerous other MLOs working at this location.

3.  MLOs for B of A were all classified by B of A as exempt employees not entitled to minimum wage or overtime pay.

4.    Throughout my employment with B of A, I usually worked in excess of forty (40) hours per workweek. On average, I worked a total __65__ hours per week.

5.    To my knowledge, all B of A MLOs were paid under the same compensation plan.

6.    Under B of A's compensation plan for MLOs, MLOs were paid monthly commissions, additional monthly incentive, and an annual incentive.  If applicable, commission payments were made during the following month for the prior month's commissions earned.  B of A paid MLOs a recoverable monthly draw against their commissions.

7.    Under B of A's compensation plan for MLOs, B of A never paid overtime to MLOs.

8.    As a MLO at B of A, I contacted potential borrowers/customers who may be interested in mortgage products offered by B of A.  My job involved B of A wanting me to sell mortgage products available through B of A to the potential borrower/customer when I was speaking with them over the phone.  The primary duties, that I customarily and regularly performed, in this position included the following:

    a.    I would speak with potential borrower/customer over the phone regarding mortgage products available through B of A.

    b.    Our goal as a MLO was to find a mortgage loan product available through B of A and sell that product to a qualified borrower/customer.  Our job performance and compensation was based exclusively on our ability to generate loan sales.  The vast majority of our time at work was spent attempting to generate these sales for the qualified borrowers/customers.

    c.    I would take credit applications over the phone or in person by having potential borrower/customer provide me with basic financial information that

2

would allow me to pull credit information on the borrower/customer from a standardized system on the computer.

d.   I would tell the borrower/customer what products were available and provide them basic information regarding mortgage products such as applicable fees and interest rates. Information on these products was provided to me via B of A and its software, on line pricing engine, or other set information.

e.   I would allow the borrower/customer to select the mortgage product that met their needs and assist them with any questions they may have regarding their decision.

f.   I would then collect all necessary paperwork from the borrower/customer in order for B of A to process the mortgage product that they selected in order to sell the loan product. What paperwork needed to be collected was set forth on guidelines provided to me. After all the financial paperwork was gathered from the borrower/customer regarding their application, and it was determined that they were pre-qualified by set criteria, the package of paperwork would be provided to B of A's underwriters for review and approval. The underwriters determined whether the borrower/customer's mortgage application would be accepted.

g.   I did not review borrower/customer's financial information with them in order to provide any financial advice or counseling regarding their personal financial situation or their financial decisions. I reviewed the financial paperwork they provided to me to ensure everything on the required list was received and to make sure it matched the initial information that they

3

provided to me. This was being done in order to sell the loan product. I never provided any financial advice or consultation to the borrower/customer on whether they should undertake any debt given their financial situation. If they qualified and wanted the mortgage, I would proceed with their request.

9.    The majority of the duties I performed as a MLO were governed by federal and lending institution guidelines.

10.   I did not perform any work as a MLO for B of A in such areas as tax advice, guidance, recommendation or consulting for B of A; finance advice, guidance, recommendation or consulting for B of A; accounting advice, guidance, recommendation or consulting for B of A; budgeting advice, guidance, recommendation or consulting for B of A; auditing advice, guidance, recommendation or consulting for B of A; insurance advice, guidance, recommendation or consulting for B of A; quality control advice, guidance, recommendation or consulting for B of A; purchasing advice, guidance, recommendation or consulting for B of A; procurement advice, guidance, recommendation or consulting for B of A; advertising advice, guidance, recommendation or consulting for B of A; marketing advice, guidance, recommendation or consulting for B of A; research advice, guidance, recommendation or consulting for B of A; safety and health advice, guidance, recommendation or consulting for B of A; personnel management advice, guidance, recommendation or consulting for B of A; human resources advice, guidance, recommendation or consulting for B of A; employee benefits advice, guidance, recommendation or consulting for B of A; labor relations advice, guidance, recommendation or consulting for B of A; public relations, government relations advice, guidance, recommendation or consulting for B of A; computer network, internet and

4

database administration advice, guidance, recommendation or consulting for B of A; or legal and regulatory compliance advice, guidance, recommendation or consulting for B of A.

11.   I never supervised any other employee working for B of A while working as a MLO. I never worked as a team-leader over any employees on any B of A projects; provided any performance reviews for other employees; hired, fired, demoted, promoted, suspended, or punished in any fashion, any other employee at B of A while working as a MLO. I understand that some MLOs may have had an assistant which they supervised.

12.   From my experience and observations from working for B of A as a MLO, all my statements regarding work performed by a MLO set forth in paragraphs 8-11 above applied to all B of A MLOs.

Pursuant to 42 U.S.C. §1746, I declare under penalty of perjury that the foregoing statements are true and correct and that I have personal knowledge of the information provided above.

_____          _____
Signature                                                          Date

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM P. KELLY, et al | ) |
| | ) |
| On Behalf of Themselves And | ) |
| All Others Similarly Situated, | ) |
| | ) |
| Plaintiffs, | )   Case No. 1:10-CV-05332 |
| | ) |
| vs. | ) |
| | ) |
| BANK OF AMERICA, N.A. et al | ) |
| | ) |
| Defendants. | ) |

## SWORN STATEMENT

I, __David Strause__, hereby swear under oath and penalty of perjury, that the

following information is true and correct to the best of my personal knowledge and belief:

1. My name is __David Strause__, and I currently reside at:

   __2025 Broadway  23 H_____ (street address)

   __New York   NY   10023_____ (city, state, zip).

2. I worked as a Home Loan Consultant for Countrywide from on or about

   __Feb 7, 2007_____ through the time Bank of America acquired Countrywide. I then

   worked as a Mortgage Loan Officer for Bank of America ("BOA") until

   __March 2009 - April 26, 2010__ or present (if currently employed, circle present). I was a

   Countrywide Home Loan Consultant ("HLC") and BOA Mortgage Loan Officer

   ("MLO") who worked at the Companies' office(s) located in:

   __New York_____ (city), __NY__ (state).

1155 Avenue of Americas (city), NY (state). NY

_____ (city), _____ (state).

There were numerous other HLCs and/or MLOs working at this/these location(s).

3.    HLCs for Countrywide were all classified by Countrywide as exempt employees not
entitled to minimum wage or overtime pay.

4.    Throughout my employment with Countrywide and BOA, I usually worked in excess of
forty (40) hours per workweek. On average, I worked a total _70_ hours per week.

5.    To my knowledge, all Countrywide HLCs were paid under the same compensation plan.

6.    Under Countrywide's compensation plan for HLCs, HLCs were solely paid
commissions.  If applicable, commission payments were made during the following
month for the prior month's commissions earned.  Some HLCs received minimum
compensation guarantees at the beginning of their employment before they were paid
only commissions.

7.    Under Countrywide's compensation plan for HLCs, Countrywide never paid overtime to
HLCs.

8.    To my knowledge, all B of A MLOs were paid under the same compensation plan.

9.    Under B of A's compensation plan for MLOs, MLOs were paid monthly commissions,
additional monthly incentive, and an annual incentive.  If applicable, commission
payments were made during the following month for the prior month's commissions
earned. B of A paid MLOs a recoverable monthly draw against their commissions.

10.   Under B of A's compensation plan for MLOs, B of A never paid overtime to MLOs.

11.   As a HLC at Countrywide and MLO at B of A, I contacted potential
borrowers/customers who may be interested in mortgage products offered by

2

Countrywide or B of A.  My job involved Countrywide and B of A wanting me to sell mortgage products available through Countrywide or B of A to the potential borrower/customer when I was speaking with them over the phone.  The primary duties, that I customarily and regularly performed, in this position included the following:

a.   I would speak with potential borrower/customer over the phone regarding mortgage products available through Countrywide or B of A.

b.   Our goal as a HLC and MLO was to find a mortgage loan product available through Countrywide or B of A, and sell that product to a qualified borrower/customer.   Our job performance and compensation was based exclusively on our ability to generate loan sales.  The vast majority of our time at work was spent attempting to generate these sales for the qualified borrowers/customers.

c.   I would take credit applications over the phone or in person by having potential borrower/customer provide me with basic financial information that would allow me to pull credit information on the borrower/customer from a standardized system on the computer.

d.   I would tell the borrower/customer what products were available and provide them basic information regarding mortgage products such as applicable fees and interest rates.  Information on these products was provided to me via Countrywide or B of A and its software, on line pricing engine, or other set information.

3

e.   I would allow the borrower/customer to select the mortgage product that met their needs and assist them with any questions they may have regarding their decision.

f.   I would then collect all necessary paperwork from the borrower/customer in order for Countrywide or B of A to process the mortgage product that they selected in order to sell the loan product. What paperwork needed to be collected was set forth on guidelines provided to me. After all the financial paperwork was gathered from the borrower/customer regarding their application, and it was determined that they were pre-qualified by set criteria, the package of paperwork would be provided to Countrywide's or B of A's underwriters for review and approval. The underwriters determined whether the borrower/customer's mortgage application would be accepted.

g.   I did not review borrower/customer's financial information with them in order to provide any financial advice or counseling regarding their personal financial situation or their financial decisions. I reviewed the financial paperwork they provided to me to ensure everything on the required list was received and to make sure it matched the initial information that they provided to me. This was being done in order to sell the loan product. I never provided any financial advice or consultation to the borrower/customer on whether they should undertake any debt given their financial situation. If they qualified and wanted the mortgage, I would proceed with their request.

12.   The majority of the duties I performed as a HLC and B of A were governed by federal and lending institution guidelines.

4

13. I did not perform any work as a HLC for Countrywide or MLO for B of A in such areas as tax advice, guidance, recommendation or consulting for Countrywide or B of A; finance advice, guidance, recommendation or consulting for Countrywide or B of A; accounting advice, guidance, recommendation or consulting for Countrywide or B of A; budgeting advice, guidance, recommendation or consulting for Countrywide or B of A; auditing advice, guidance, recommendation or consulting for Countrywide or B of A; insurance advice, guidance, recommendation or consulting for Countrywide or B of A; quality control advice, guidance, recommendation or consulting for Countrywide or B of A; purchasing advice, guidance, recommendation or consulting for Countrywide or B of A; procurement advice, guidance, recommendation or consulting for Countrywide or B of A; advertising advice, guidance, recommendation or consulting for Countrywide or B of A; marketing advice, guidance, recommendation or consulting for Countrywide or B of A; research advice, guidance, recommendation or consulting for Countrywide or B of A; safety and health advice, guidance, recommendation or consulting for Countrywide or B of A; personnel management advice, guidance, recommendation or consulting for Countrywide or B of A ; human resources advice, guidance, recommendation or consulting for Countrywide or B of A ; employee benefits advice, guidance, recommendation or consulting for Countrywide or B of A; labor relations advice, guidance, recommendation or consulting for Countrywide or B of A; public relations, government relations advice, guidance, recommendation or consulting for Countrywide or B of A; computer network, internet and database administration advice, guidance, recommendation or consulting for Countrywide or B of A; or legal and regulatory compliance advice, guidance, recommendation or consulting for Countrywide or B of A.

5

14.    I never supervised any other employee working for Countrywide or B of A while working as a HLC or MLO. I never worked as a team-leader over any employees on any Countrywide or B of A projects; provided any performance reviews for other employees; hired, fired, demoted, promoted, suspended, or punished in any fashion, any other employee at Countrywide and B of A while working as a HLC or MLO. I understand that some HLCs and MLOs may have had an assistant which they supervised.

15.    From my experience and observations from working for Countrywide as a HLC and B of A as a MLO, all my statements regarding work performed by a HLC and a MLO set forth in paragraphs 11-14 above applied to all Countrywide HLCs and B of A MLOs.

Pursuant to 42 U.S.C. §1746, I declare under penalty of perjury that the foregoing statements are true and correct and that I have personal knowledge of the information provided above.

_____                              1-11-11
Signature                                                                    Date

6