```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ANN MARIE DIPONZIO, on behalf of herself
and all other employees similarly situated,

                         Plaintiff,          11-CV-06192

              v.                             DECISION
                                             and ORDER
BANK OF AMERICA CORPORATION and BANK OF
AMERICA, NATIONAL ASSOCIATION

                         Defendants.
_____
```

## Introduction

Ann Marie DiPonzio ("Plaintiff") filed this class action suit with the Supreme Court of the State of New York, County of Monroe, alleging violations of the New York Labor Law by Bank of America Corporation ("BOAC") and Bank of America, National Association ("BANA") (collectively, "Defendants"). Thereafter, Defendants removed this action from state court to this Court, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332. Plaintiff now moves to remand this action back to state court pursuant to 28 U.S.C. § 1447, on the grounds that Defendants have failed to satisfy their burden to show that the amount in controversy is sufficient for this Court's jurisdictional requirements. For the reasons set forth below, Plaintiff's motion to remand is granted and this action is remanded to state court.

## Background

On March 10, 2011, Plaintiff filed a class action suit with the Supreme Court of the State of New York, County of Monroe,

pursuant to Article 9 of the New York Civil Practice Law and Rules ("CPLR"). Plaintiff's suit claims that Defendants violated the NYLL, by failing to pay proper wages to loan originator employees in the Buffalo, Rochester, Syracuse, Albany, and Saratoga Springs metropolitan areas of New York State.

On March 14, 2011, Defendants removed the complaint to this Court, pursuant to CAFA and 28 U.S.C. § 1332(d). On April 20, 2011, Plaintiff moved to remand the case to state court on the grounds that federal jurisdiction does not exist in this case because Defendants had failed to meet their burden of proving to a reasonable probability that the amount in controversy exceeds five million dollars, as required by Sec. 4 of CAFA, codified at 28 U.S.C. § 1332(d)(2).

**Discussion**

**I. Standard of Review**

Federal district courts are, fundamentally, courts of limited jurisdiction. See Keene Corp. v. United States, 508 U.S. 200, 207, (1993). Congress has the power to define the boundaries of their authority, and district courts cannot disregard those boundaries. Id. The right of removal to federal court is a statutory right and only exists in strict conformity with its statutory requirements. Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1045 (2d Cir. 1991).

Defendants have the right under 28 U.S.C. § 1441 to remove cases over which a federal district court would have had original

jurisdiction. Jefferson County v. Acker, 527 U.S. 423, 430 (1999). 28 U.S.C. § 1332(d)(2)(A) grants federal district courts jurisdiction over class actions in which the amount in controversy exceeds five million dollars and there is diversity of citizenship between any plaintiff in the class and all defendants.

The party claiming federal jurisdiction bears the burden of establishing that subject matter jurisdiction exists. Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006); Res Exhibit Services, LLC v. Tecan Group, Ltd., 2010 U.S. Dist. LEXIS 60948 (W.D.N.Y. 2010). A party asserting federal jurisdiction under 28 § 1332(d)(2) must prove to a "reasonable probability" that the amount in controversy exceeds five million dollars. Blockbuster, 472 F.3d at 59.

Judicial scrutiny is particularly important in the context of removal, because removal implicates both state court independence and the federal docket. Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F.Supp.2d 177, 179 (S.D.N.Y.2003). "Out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve any doubts against removability." In Re Methyl Tertiary Butyl Ether Products Liability Litigation, 488 F.3d 112, 124 (2d Cir. 2007) (Internal quotations removed).

Because this Court finds that Defendants have failed to satisfy their burden to show to a reasonable probability that the amount in controversy exceeds five million dollars, the Court grants Plaintiff's motion and remands the case back to state court.

**II. Defendants have Failed to Establish Federal Jurisdiction**

    **A. Requirements for Federal District Jurisdiction**

In order for a federal district court to have jurisdiction over the proposed class action lawsuit under CAFA, the amount in controversy must exceed five million dollars; there must be complete diversity of citizenship between all the defendants and at least one member of the class of plaintiffs; and there must be at least 100 potential members of the plaintiff class. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B). Defendants bear the burden of showing, to a "reasonable probability," that their removal of the case to the Court's diversity jurisdiction was justified. Blockbuster Inv. v. Galeno, 472 F.3d 53, 59 (2d Cir. 2006).

Plaintiff and Defendants both assert that BANA is a federally chartered bank, that BOAC is incorporated under the laws of Delaware, and that both have their principal place of business in Charlotte, North Carolina. Defendants are therefore not citizens of New York for the purpose of determining diversity jurisdiction. Hertz Corp. v. Friend, 130 S. Ct. 1181, 1192 (2010). The complaint alleges that Plaintiff is a New York State resident, and, additionally, Defendants' removal notice states that plaintiff is a New York State citizen.

Plaintiff's complaint provides only vague and conclusory suggestions as to the potential number of class members. The complaint admits that the size of the class is unknown, but predicts between 50 and 100 members. Defendants contest this

estimate and submit the declaration of Burges E. Burrows, Senior Vice President for BANA, in which he avows that 118 BANA employees meet the requirements for members of the class within the statutory period, as required by 28 U.S.C. § 1332(d)(5)(B).

I find that Defendants have satisfied their burden of establishing to a reasonable probability that diversity is present and that there are more than 100 potential class members. Therefore diversity of citizenship appears to exist between Plaintiff and Defendants for a class action suit under 28 U.S.C. § 1332(d)(2)(A). Plaintiff does not dispute Defendants' claims that these requirements have been met and argues only that Defendant has failed to show to a reasonable probability that the amount in controversy exceeds the statutory amount.

### B.    Defendants Must Establish the Amount in Controversy to a Reasonable Probability

Although I find that Defendants have satisfied their burden with respect to the numerosity and diversity requirements, Defendants must demonstrate that, to a reasonable probability, the amount in controversy exceeds five million dollars. 28 U.S.C. § 1332(d)(2); Blockbuster, 472 F.3d at 59. Where, as here, the pleadings are silent as to the amount in controversy, "federal courts may look outside those pleadings to other evidence in the record." United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square, Inc., 30 F.3d 298, 305 (2d Cir. 1994).

Defendants contend that the amount in controversy is composed of three types of costs and damages: attorneys' fees, liquidated damages, and actual damages from lost wages. The Court will consider each of these categories seriatim.

**1) Attorneys' Fees**

Defendants argue that they are entitled to assume attorneys' fees of 33 percent of the total damages in their calculation of the amount in controversy. "Attorney's fees can be considered as part of the amount in controversy where they are anticipated or awarded in the governing statute." Pollock v. Trustmark Ins. Co., 367 F. Supp. 2d 293, 298 (E.D.N.Y 2005). Because this action is brought pursuant to the NYLL, which expressly allows for an award of attorney's fees, see N.Y. Labor Law § 198 (McKinney 2011), I find that attorneys' fees may be included in the calculation of the amount in controversy.

Defendants argue that the court should use a benchmark rate of 33% of potential damages to calculate potential attorneys' fees. Attorneys' fees of 33% of damages are "consistent with the norms of class litigation" in the Second Circuit. McMahon v. Oliver Chenc Catering and Events, LLC, 2010 U.S. Dist. LEXIS 18913, *20-21 (S.D.N.Y. 2010). See also Duchene v. Michael Cetta, Inc., 2009 U.S. Dist. LEXIS 85955, *8-9 (S.D.N.Y. 2009) (awarding attorneys' fees of 32.2% of a $3,150,000 settlement fund in a Fair Labor Standards Act ("FLSA") and NYLL claim); Stefaniak v. HSBC Bank USA, 2008 U.S. Dist. LEXIS 53872, *9 (W.D.N.Y. June 28, 2008) (awarding attorneys'

fees of 33% of $2.9 million fund in a FLSA and NYLL claim); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110, 111-12 (2d Cir. 2007) (holding that a private retainer agreement granting attorneys one third of total damages was valid because it reflected what reasonable paying clients would agree to). Plaintiff offers no contrary precedent and does not challenge Defendants' method of determining attorneys' fees.

Accordingly, for the limited purpose of determining the amount in controversy, attorneys' fees will be estimated to be 33% of the total damages otherwise contemplated.

**2) Liquidated Damages**

Plaintiff's original complaint included a request for liquidated damages, which, under NYLL, can consist of damages of up to 100% of the unpaid wages.[1] N.Y. Labor Law § 198 (McKinney 2011). However, under Article 9 of New York's CPLR, class action suits may not present a claim for liquidated damages. CPLR § 901 (McKinney 2011). Because liquidated damages may not be sought in a class action suit under New York law, Plaintiff must amend her pleadings to remove her request for liquidated damages. <u>Andrade v. J.P. Morgan Chase Bank, N.A.</u>, 2009 U.S. Dist. LEXIS 80836, *8 (E.D.N.Y 2009). Since this class action law suit was filed in state court

---

[1] Prior to amendment of the NYLL in 2010, liquidated damages were capped at 25% of unpaid wages. Defendants express uncertainty as to what percentage would apply to unpaid overtime from the time before the NYLL's amendment.

-7-

under New York law, I find that liquidated damages may not be included in the calculation of the amount in controversy.

Defendants argue that Plaintiff cannot avoid federal diversity jurisdiction with a post-removal amendment of her pleadings. Carter v. Geldis, 2002 U.S. Dist LEXIS 9791 (E.D.N.Y. 2002); See also Collins v. Flynn, 2008 U.S. Dist. LEXIS 109877, *19 (W.D.N.Y. 2008) (holding that an offer to settle for $70,000 did not reduce the amount in controversy to less than $75,000); Quinones v. Nat's Amusements, Inc., 2007 U.S. Dist. LEXIS 38490, *7-8 (S.D.N.Y. 2007) (holding that a post-removal stipulation that damages were less than $75,000 was irrelevant); Armstrong v. ADT Sec. Servs., Inc., 2007 U.S. Dist. LEXIS 5452 (S.D.N.Y. 2007) (refusing to rely on amendment of claimed damages from $1 million to $70,000 when the defendant had shown that the amount in controversy was likely to exceed $75,000). Defendants' argument, however, misses the point. The Plaintiff here is not amending her pleadings simply to avoid diversity jurisdiction; she is required to do so in order to establish a valid class action suit under the New York CPLR. Andrade, 2009 U.S. Dist. LEXIS 80836, at *8. Amending the complaint does not change the amount in controversy, because liquidated damages, whether requested or not, cannot be included in a class action suit under CPLR § 901.

Defendants claim that under the Supreme Court's recent ruling in Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431(2010), CPLR § 901 is preempted by Rule 23 of the

-8-

Federal Rules of Civil Procedure. In Shady Grove, the Supreme Court held that a class action suit filed in the Eastern District of New York, claiming statutory damages under New York law, was valid under Rule 23, notwithstanding the prohibition on such class actions by CPLR § 901. Id. at 1443. The Supreme Court ruled that Rule 23 did not grant a new substantive remedy, but instead merely allowed plaintiffs to seek relief through a different process while in federal court. Id. Whereas CPLR § 901 allowed statutory damages to be claimed only in cases brought on behalf of individuals, Rule 23 allows multiple plaintiffs to claim statutory damages together in one class action suit. Id. In Shady Grove, the total statutory damages for all class members in the federal suit exceeded five million dollars, thus the amount in controversy met the requirement for federal diversity jurisdiction. Id.

However, Defendants' assertion that Shady Grove applies not only to claims filed in federal court but also to those removed from state court is unsupported. Shady Grove clearly stated that Congress has the "undoubted power to prescribe rules for the [federal] courts it has created" which New York cannot supercede. Id. at 1442. The Supreme Court nonetheless took for granted that the state of New York had the power to make procedural rules for its own courts. Id. at 1443. "The *consequence* of excluding certain [class] actions [from state court] may be to cap the damage a defendant can face in a single suit." Id. Because of the different

procedural statutes, "the same case may follow a different course if filed in federal instead of state court." Id. at 1448.

Because this case was filed in state court, it takes a different course than Shady Grove. For this case to be removed, the total amount in controversy must exceed five million dollars. 28 U.S.C. § 1332(d). The amount in controversy is determined with respect to the time of removal. Collins v. Flynn, 2008 U.S. Dist. LEXIS 109877, *17 (W.D.N.Y. 2008). The calculation of the amount in controversy at the time of removal depends, in turn, on state law. See Jeter v. Jim Walker Homes, Inc., 414 F. Supp. 791, 792 (W.D. Ok. 1976) (finding that the amount in controversy was insufficient because the claim for future wages was invalid under state law). Because New York law prohibits recovery of liquidated damages in class action suits, no liquidated damages were in consideration at the time of removal. Andrade, 2009 U.S. Dist. LEXIS 80836, at *8.

In setting monetary requirements for diversity jurisdiction, Congress has demonstrated a clear intent to preserve the resources of the federal judiciary for only claims that exceed a certain amount. Snyder v. Harris, 394 U.S. 332, 340 (1969). It would be inconsistent with Congress's intent to allow removal to federal courts of state suits which do not meet the statutory amount satisfying the jurisdictional requirement. See Smith v. Am. Gen. Life & Accident Ins. Co., 337 F.3d 888 (7th Cir. 2003) (holding that diversity jurisdiction was inappropriate when, to a legal certainty, the requisite level of damages could not be claimed).

Because Plaintiff legally could not claim liquidated damages in the state court in which the case was proceeding, liquidated damages may not be included to calculate whether the amount in controversy satisfied the requirements for removal to federal courts' diversity jurisdiction.

### 3) Lost Wages

For purposes of determining the "lost wage" component of the amount in controversy, Defendants have estimated the number of class members that will seek damages, and multiplied that number by the estimated average amount of overtime worked and the average rate of pay that would be owed for overtime hours. Defendants introduce sworn declarations to establish that 118 potential class members exist, that they were employed within the statutory period for an average of 1.46 years each, and that the average overtime wages of the class members would have been $39.64 per hour. Plaintiff does not challenge these figures. The Court accepts Defendants' estimates of the average overtime wage, average duration of employment, and potential number of class members.

The parties do, however, sharply dispute the amount of overtime hours that class members will claim to have worked. In attempting to establish the number of hours that class members will claim to have worked, Defendants rely on the sworn statements of two plaintiffs from a FLSA class action suit proceeding in the Northern District of Illnois, <u>Kelly, et al. v. Bank of America, N.A. et al.</u>, N.D. Ill. Case No. 1:10-cv-05332 ("<u>Kelly</u>"). Defendants

contend that the affidavits establish that class members will claim to have worked enough overtime hours on average to meet the five million dollar requirement for diversity jurisdiction. The plaintiffs in Kelly claimed to have worked an average of 25 and 30 hours overtime per week, respectively, throughout their period of employment. Defendants argue that these statements justify the inference that potential class members in this action will claim sufficient overtime hours to meet the amount in controversy requirement. Specifically, Defendants claim it is reasonably probable that class members will claim on average to have worked at least eleven and as many as thirty hours overtime per week, for fifty weeks per year of employment.

Plaintiff argues that Defendants' estimate of the overtime hours worked is too speculative to meet their burden of proof. Plaintiff, citing to Bartnikowski v. NVR, Inc., 307 Fed Appx. 730 (4th Cir. 2009), and Ellis v. Pacific Bell Telephone Co., 2011 .S. Dist. LEXIS 16045 (C.D. Cal. 2011), argues that two sworn statements from a different lawsuit are insufficient evidence on which to ground sweeping inferences about the class members of this suit as a whole. Plaintiff argues that Defendants have failed to introduce any evidence that the Kelly Plaintiffs are representative of the class members in this class action suit. Plaintiff also notes that in the Kelly suit, the Defendants disparaged, as "conclusory and speculative declarations," the statements on which they now rely. Defendants cite to Blomberg v. Serv. Corp. Int'l,

2011 U.S. App. LEXIS 7681 (7th Cir. 2011), in support of their contention that the sworn statements provide sufficient support for their estimates. Defendants also argue that their estimates should be treated as valid since Plaintiff does not offer any evidence to the contrary.

Bartnikowski and Ellis conflict with Blomberg as to whether individual claims can be used as evidence of the potential damages to the members as a whole of a different, but similar, class action. In Bartnikowski, the Fourth Circuit affirmed a district court's ruling that the defendant had failed to show that the amount in controversy was sufficient for removal to federal court. 307 Fed. Appx. at 739. The court held that the defendant's estimate that class members would claim to have worked at least five hours of overtime per week was a "wholly unsupported assumption" when it was based only on the affidavit of the plaintiff of a different suit. Id. at 736. The court held that reliance on the affidavit was unjustified both because there was no evidence that it was representative of the class members in Bartnikowski, and because it did not explicitly claim that any class member had worked 15 hours overtime per week, as suggested by the defendant. Id. at 736.

In Ellis, the Central District of California granted remand of a class action suit for unpaid wages to state court. 2011 U.S. Dist. LEXIS 16045, *12. The court ruled that the defendants' estimate that class members would claim to have worked 3.74 hours overtime per week was "not based on any evidence of actual hours

-13-

worked by potential class members... but merely [made] to arrive at $5,000,000." Id. at *8 (internal quotations removed). The court held that the defendants could not base their estimate on similar claims made in a related suit, because 1) the evidence from the other suit was produced only as hearsay 2) the defendants did not produce evidence that claims from the other suit would be representative of claims in Ellis, and 3) because the hours worked in the other suit were "hotly disputed". Id. at *11. The court ruled that it could not ground jurisdiction on such shaky "speculation and conjecture." Id. at 10.

In Blomberg, the Seventh Circuit overruled a district court decision remanding a class action suit to state court for lack of jurisdiction. 2011 U.S. App. LEXIS 7681. The defendant had cited depositions of two plaintiffs involved in a related class action suit claiming that the two had worked 2600 hours overtime, combined, over the course of a year. Id. at *4. The district court had held that defendant could not rely on these depositions to establish that class members would likely claim to have worked an average of at least 552 hours each, because the defendant had not produced any evidence that the depositions were representative of the claims in Blomberg. Id. at *4-5. The Seventh Circuit ruled that this view was "too narrow". Id. at *5. It held that the depositions showed "the nature of the hours sought and to demonstrate how the amount in controversy was met based on the scope of the Plaintiff's claims." Id. So long as defendants provide a plausible explanation,

"the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." Id. at 6.

The statements from the Kelly case lack some of the evidentiary weaknesses of the evidence relied upon in Bartnikowski and Ellis. Unlike Bartnikowski, the Kelly statements explicitly claim that individual plaintiffs worked an average of 25-30 hours overtime per week. Unlike Ellis, Defendants have produced actual statements, rather than mere hearsay.

Nonetheless, the Kelly statements are broadly similar to the evidence used in Bartnikowski, Ellis, and Blomberg. As in those cases, Defendants here rely on individual statements from a different but similar case as the only factual support for their estimate of the number of unpaid hours overtime that will be claimed on average by the members of Plaintiff's class action suit. As in those cases, Defendants do not introduce any evidence that the claims of individual plaintiffs in a separate state will be representative of Plaintiff's class as a whole.

The Court acknowledges the "difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." Blomberg, 2011 U.S. App. LEXIS 7681, *2-3; see also Bartnikowski, 307 Fed. Appx. at 734. However, that difficulty simply means that defendants may not meet their burden, especially when "doubts about jurisdiction are resolved in favor of remand to state court." Bartnikowski, 307 Fed. Appx. at

739. Like the majority in Bartnikowski, this Court is "reassured... by the fact a CAFA defendant who cannot meet his burden for removal at the early stages of litigation may still have recourse to the federal courts later, as Congress has eliminated the one-year time limit on CAFA removal actions." Id. at 739.

This Court finds the holdings of Bartnikowski and Ellis more persuasive than that of Blomberg. In Blomberg, the Seventh Circuit suggests that a "plausible, good faith estimate" satisfies a defendant's burden. Blomberg, 2011 U.S. App. LEXIS 7681, at *6. However, the Court could find any number of potentially counterfactual inferences to be merely "plausible" without finding Defendants have produced actual evidence supporting that inference to a reasonable probability. Bartnikowski, 207 Fed. Appx at 737. The Seventh Circuit found the Blomberg defendant's estimate to be made in "good faith", 2011 U.S. App. LEXIS 7681, at *6. Given the Defendants' repeated failures to assume enough unpaid overtime hours to satisfy the requirements for diversity jurisdiction, it is easier to construe their estimate as "merely [made] to arrive at $5,000,000." Ellis, 2011 U.S. Dist. LEXIS 16045 at *8.[2]

---

[2] Defendant's original estimate of ten overtime hours per week yielded only $4,542,549.83 in damages ($39.65 x 10 x 50 x 1.46 x 118 x 1.33). Defendants' revised estimate of eleven hours overtime per week yields only $4,996,804,81 in damages ($39.65 x 11 x 50 x 1.46 x 118 x 1.33). Class members must claim on average about 11.008 hours overtime per week in order to satisfy the jurisdictional requirement.

Finally, Defendants ask the Court to make a stronger inference then any of the defendants in Bartnikowski, Ellis, or Blomberg.³ I am unwilling to grant deference to the hearsay evidence of two plaintiffs from another suit pending in a different state to satisfy this Court's jurisdictional requirement. Defendants cannot bootstrap a calculation in determining the amount in controversy upon the extraneous testimony of unrelated litigants in another, albeit similar, pending lawsuit.

Defendants have not provided sufficient evidence to support their estimate of the number of overtime hours likely to be claimed by class members. Without this figure, Defendants cannot establish that actual damages and attorneys' fees exceed the required amount in controversy. I thus find that Defendants have failed to meet their burden to show to a reasonable probability that the amount in controversy exceeds five million dollars.

**Conclusion**

For the above reasons, I hold that Defendants have failed to show to a reasonable probability that this Court has jurisdiction to hear this case. I grant Plaintiff's motion to remand the case to

---

³ The defendants in Ellis and Bartnikowski assumed that class members would claim to have worked 3.74 and 5 hours per week, respectively. Ellis, 2011 U.S. Dist. LEXIS 16045, *8; Bartnikowski, 307 Fed. Appx. at 736. The defendant in Blomberg estimated that each class member would claim on average to have worked 552 overtime hours total. Blomberg 2011 U.S. App. LEXIS 7681, at *4. Here, Defendants estimate that each class member will claim on average to have worked 11 hours overtime per week, or 803 hours overtime total.

-17-

state court and deny Defendants' request for costs and attorneys' fees in connection with this motion. Plaintiff makes no motion for attorneys' fees in connection with this motion and none are granted.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        s/Michael A. Telesca
                                        MICHAEL A. TELESCA
                                     United States District Judge

Dated:    Rochester, New York
          July 11, 2011